UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID L. LITTLEFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05CV796 CDP |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the
Commissioner's final decision denying Plaintiff David L. Littlefield's application for
disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. and
supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§
1381 et seq. Littlefield claims that he is disabled due to a history of transient
ischemic attack with residuals, atrial fibrillation, a history of congestive heart
failure, and hypertension in combination with his age, education and work
experience. The Administrative Law Judge, however, found that Littlefield was not
disabled. Because I find that the decision denying benefits was supported by
substantial evidence, I will affirm the decision.

## Procedural History

On October 28, 2002, Littlefield filed applications for a Period of Disability, Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act. Littlefield alleged disability since October 8, 2001 as a result of a stroke/heart condition which prevented him from understanding what he read, and resulted in short term memory loss and loss of comprehension. The application was denied initially[1] on January 17, 2003. Littlefield requested a hearing which was held on June 25, 2004. The ALJ determined that Littlefield was not disabled. On April 15, 2005, the Appeals Council denied Littlefield's request for review. Thus, the decision of the ALJ stands as the final determination of the Commissioner.

## Evidence Before the Administrative Law Judge

Littlefield was 51 years old at the time of the hearing. He graduated from high school and had training as an auto mechanic. Littlefield had been employed as an auto mechanic and worked for several dealerships over the years.

---

[1] Missouri is one of several test states participating in modifications of the disability determination procedures applicable to this case. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001). These modifications include the elimination of the reconsideration step and, in some cases, the Appeals Council review step in the administrative appeals process. See id. Therefore, plaintiff's appeal in this case proceeded directly from his initial denial to the ALJ level.

Littlefield has not worked since October 8, 2001 when he lost his job. He asserts that he became unable to work due to his history of transient ischemic attack with residuals, atrial fibrillation, congestive heart failure, and hypertension. Littlefield was terminated from his employment because he improperly reassembled an engine resulting in severe damage to the engine and because he had lost his driver's license as a result of a DWI conviction. At the hearing, Littlefield testified that he can stand for a couple of hours and can walk at least a half mile. Additionally, he testified that he could lift fifty pounds and could carry twenty pounds. Littlefield's testimony did reveal that, aside from his inability to read, physical limitations do not appear to prevent him from being able to work. Although Littlefield testified only very briefly about his limitations, the record includes a three page statement by his brother regarding Littlefield's limitations including his general lack of comprehension and his inability to care for himself. The statement also indicated that Littlefield was unable to concentrate or remember recent events or conversations.

Medical Expert, Morris Alex, M.D., testified at the hearing. He testified that according to the brother's statement, Littlefield would have limitations including comprehension and ability to follow through. He additionally noted that the limitations would not necessarily be physical, but would include anything that

requires the ability to read, write, or follow directions.  Again, the opinion about following directions was derived from the brother's statement.  Additionally, Littlefield's attorney questioned the medical expert regarding Littlefield's total sensory ability under the Wechsler memory scale.  The medical expert testified that Littlefield's total sensory ability was an open question.

Vocational expert John E. Grenfell also testified at the hearing.  The ALJ posed a hypothetical question that asked whether there would be any jobs that a hypothetical individual with Littlefield's characteristics could do.  These characteristics included his age, education, training, past relevant work experience, and limitations including: the ability to stand for a couple hours, the ability to walk half a mile, the ability to occasionally lift fifty pounds, the ability to carry twenty pounds, the ability to function at a low average intelligence, and without the ability to read any words longer than two or three letters or to follow any more than two steps in sequence.  The vocational expert testified that such an individual could be employed as an off bearer, warehouse worker, agricultural  sorter, or truck driver helper.  When questioned by Littlefield's attorney, the vocational expert testified that there would not be any work for a person with the conditions described in Littlefield's brother's statement.

**Medical Records**

By October 3, 2000, Littlefield had been seen by Dr. Louis Deane for a severe left ventricular dysfunction and atrial fibrillation. On June 1, 2001, he was admitted to St. John's Mercy Medical Center and was diagnosed with transient ischemic attack as evidenced by loss of vision, hypertension, alcohol abuse, medical noncompliance, and atrial fibrillation rate control. Following his discharge from St. John's, Littlefield was seen by his primary care physician, Dr. Stein.

Dr. Stein's notes of June 7, 2001 indicate that Littlefield continued to have difficulty reading following his discharge from St. John's. Dr. Stein saw Littlefield again in August, and his August 8, 2001 notes indicate that Littlefield had a transient ischemic attack with only minimal improvement as well as hypertension, atrial fibrillation, and congestive heart failure.

On October 26, 2001, Littlefield was again seen at St. John's Mercy Hospital where an MRI of his brain was conducted. The MRI demonstrated findings of an old left posterior medial temporal and occipital lobe infarct.

On October 30, 2001, St. John's Mercy Medical Center completed a speech and therapy evaluation report which reflected that Littlefield was six standard deviations below the norm in terms of cognitive and linguistic skills, one standard deviation below the mean with regard to verbal abstract reasoning, two and one-half

standard deviations below the mean on discourse, one standard deviation below the mean for visual confrontational meaning, and two standard deviations below the mean on the discourse rating scale. Further, Littleton was noted to have been frustrated by his ability to read and write.

Littlefield continued to see Dr. Stein whose notes on November 8, 2001 reflect a continuing assessment of atrial fibrillation, halitosis, and headache with stress. Dr. Stein's notes from February 13, 2002 indicate atrial fibrillation/congestive heart failure, fatigue, decreased moods, and mild eczema.

Littlefield attended speech therapy but he continued to have problems with reading. At that time, stress or anxiety were considered to be contributing factors to his reading difficulties. On January 25, 2002, Littlefield's speech therapist, Pam Blanke, M.S., indicated that he had made minimal mild improvement over the period of six months of treatment and that his effort was inconsistent. In addition, Littlefield had findings of hypertension, atrial fibrillation and itchy areas on the arms and face.

Littlefield continued to see Dr. Stein, and in June 2002, he complained of high blood pressure and trouble breathing. At that time, he had also run out of medication for several days. He was again assessed with atrial fibrillation with hypertension, mild congestive heart failure and known cardiomyopathy, stress and

anxiety.  In July 2002, Littlefield was prescribed Celexa as a result of coronary artery disease, stress, and anxiety.

On December 9, 2002, Littlefield was seen for a psychological evaluation by Ursula Marsh, M.A. under supervision by Robert Harris, Ph.D.  During the evaluation he was administered a Wechsler Adult Intelligence Scale - 3rd Edition (WAIS-III); a Wechsler Memory Scale - 3rd Edition; Trails Forms A & B; a Clinical Interview; and Adult Medical/Developmental History Form.  Littlefield obtained a verbal IQ of 77, a performance IQ of 85 and a full scale of 79.  On the Wechsler Memory Scale, Littlefield's immediate visual memory was at the second percentile and his visual delayed memory was at the first percentile.  On the Trails making A&B Tests, Littlefield was below average on Trail Making A and had a very slow score on Trail Making B, a more complex task, placing him in the fourth percentile and second percentile respectively.  At this time, Littlefield reported not being able to read words that were longer than two or three letters and not being able to remember more than two steps in a sequence.  He also reported good social functioning and no difficulty interacting in social or professional settings.  The examiner, Ms. Marsh, also noted that Littlefield's effort was not always good which resulted in test scores that underestimated his intellectual potential and memory capabilities.

On January 14, 2003, James W. Lane, Ph.D. completed a mental residual functional capacity assessment on Mr. Littlefield.  Dr. Lane reported that it was his opinion that Littlefield would be moderately limited in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and work in coordination or proximity to others without being distracted by them.  Dr. Lane also stated his belief that Littlefield would be moderately limited in his ability to complete a normal work week or work day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. Lane's notes indicate that Littlefield's residual functional capacity includes the ability to: understand, remember, and complete simple tasks; make simple work-related decisions; relate adequately to work peers and supervisors; and adapt to typical changes in the work environment.  He also noted that there was no credible evidence that Littlefield could not complete at least simple/repetitive work.

On February 4, 2003, Littlefield again saw Dr. Stein whose treatment notes reflect a diagnosis of hypertension, atrial fibrillation, status post CVA, and headaches.  Dr. Stein encouraged Littlefield to continue to work with his reading, and Dr. Stein's notes reflect that Littlefield's reading comprehension had improved,

but he was still unable to read from a manual.

In February 2003, Littlefield was seen by Dr. John D. McGarry, who he had previously seen in October 2001. According to Dr. McGarry, Littlefield had a history of left hemisphere stroke with the major deficit being resolving global dysphasia. Dr. McGarry also noted that Littlefield had difficulty with both reading and writing and gave the impression that this was a residual of left hemisphere stroke even though Littlefield's response to commands was excellent. Dr. McGarry further noted that Littlefield had a history of depression and ADHD.

Littlefield was again seen by Dr. Stein on January 6, 2004. Dr. Stein's records continued to reflect an assessment of atrial fibrillation, congestive heart failure, hypertension and adjustive disorder.

On April 4, 2004, Dr. Stein filled out a Stroke Residual Functional Questionnaire regarding Littlefield's ability to engage in work activity. In it, Dr. Stein indicated that Littlefield could no longer read. Dr. Stein reported no restrictions with regard to Littlefield's ability to walk, sit, or stand. Dr. Stein also indicated that Littlefield could tolerate moderate stress. The doctor's answers did not reveal any other limitations, including psychological limitations, that would affect Littlefield's ability to work.

## **Legal Standard**

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider: (1) the credibility findings made by the Administrative Law Judge; (2) the education, background, work history, and age of the claimant; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective

complaints relating to exertional and non-exertional impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.  Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a).  In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity.  If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities.  If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform her past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler,

739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight.  Singh, 222 F.3d at 451.  A treating physician's opinion concerning a claimant's impairment will be granted controlling weight, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Id.  While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that an opinion "do[es] not automatically control, since the record must be evaluated as a whole."  Prosch v. Apfel, 201 F.3d at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations in which other medical assessments "'are supported by better or more thorough medical evidence'" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions.  Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)).  In any

event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion. Singh, 222 F.3d at 452; Prosch, 201 F.3d at 1013; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

## The ALJ's Findings

The ALJ found that Littlefield was not disabled, considering his age, education, work experience and residual functional capacity. (Tr. 16-18). He issued the following findings:

1. The claimant met the disability insured status requirements of the Act on October 8, 2001, the date the claimant stated he became unable to work, and continues to meet them through 2007.

2. The claimant has not engaged in substantial activity since October 8, 2001.

3. The medical evidence establishes that the claimant has a history of transient ischemic attach with residuals, atrial fibrillation, a history of congestive heart failure, hypertension, and alcohol abuse in remission, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The allegations of symptoms precluding all types of work are not consistent with the evidence as a whole and are not persuasive.

5. The claimant is found credible to the extent of and the claimant's residual functional capacity and limitations are found to be the ability to stand for a couple hours at a time, the ability to walk ½ mile at a time, the ability to occasionally lift 50 pounds, the ability to carry 20

pounds, with functioning in the low average range of intelligence, with an inability to read words longer than 2 or 3 letters, the inability to follow more than 2 steps in sequence, the inability to read or write properly, and limitation to moderate work stress.

6.  The claimant cannot perform his past relevant work as an auto mechanic.

7.  The claimant was 48 years old on his alleged onset date which is defined as a younger individual.

8.  The claimant is currently 51 years old which is defined as closely approaching advanced age.

9.  The claimant has a high school education and training as an auto mechanic.

10. The claimant does not have any skills which can be utilized in occupations consistent with his residual functional capacity.

11. Based on a capacity for the full range of light or medium work and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rules 202.21, 202.14, 203.29, and 203.22, of Appendix 2, Subpart P, Regulations No. 4 would direct a finding that the claimant is not disabled.  Since the claimant cannot perform a full range of light or medium work, those Rules cannot direct the final result in this case.  It was necessary to consult a vocational expert.

12. Credible vocational expert testimony established that a hypothetical individual with the claimant's age, education, training, past relevant work experience, and the residual functional capacity and limitations set out above could perform a variety of unskilled jobs that would not require any reading, and would be low stress in nature, including the in excess of 200,000 off bearer, 300,000 warehouse worker, 50,000 agricultural sorter and the 150,000 truck driver jobs that exist in the national economy.  That is a significant number of jobs in the national

economy.

13. The claimant is not disabled because there are a significant number of jobs the claimant can perform (20 CFR 404.1520).

(Tr. 16-18).

## Discussion

Littlefield raises several claims on appeal of the Commissioner's decision. He first argues that the ALJ erred in assessing his residual functional capacity. Littlefield next argues that the ALJ erred in dismissing his brother's statement when determining his residual functional capacity. Littlefield also argues that the ALJ erred in that the ALJ found Littlefield's brother's statements not credible with regard to Littlefield's symptoms and limitations. Finally, Littlefield argues that the ALJ erred in accepting the vocational expert's testimony as substantial evidence. He claims that the vocational expert's testimony was not substantial evidence for two reasons: (1) that the error alleged above with regard to his residual functional capacity caused the hypothetical question to the vocational expert to be improper and (2) that finding against disability was improper because the vocational expert's testimony conflicted with the Dictionary of Occupational Titles.

### 1. Residual Functional Capacity

Littlefield first argues that the ALJ erred in assessing his residual functional

capacity. Littlefield argues that the ALJ failed to properly consider testing that showed marked impairments in his communications and memory. Specifically, Littlefield contends that the ALJ erred in failing to conclude that Littlefield had limitations with regard to his communicative ability, concentration, persistence and pace. I do not agree.

Residual functional capacity "is the most [a person] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination turns on "all the relevant evidence," including statement from the claimant. Id. Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)). Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogemeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

In making a finding of residual functional capacity, an ALJ may consider non-medical evidence, but the residual function capacity finding must be supported by some medical evidence. See Lauer, 245 F.3d at 703. In determining subjective complaints, such as Littlefield's complaints of limitations with regard to concentration, persistence, and pace, the ALJ must consider all the evidence relating to the complaints, including the claimant's prior work record and third party observations as to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Polaski, 739 F.2d at 1321-22; 20 C.F.R. §§ 404.1529, 416.929.

The ALJ adequately considered the entire record in determining Littlefield's residual functional capacity. The evidence from Littlefield's treating physician, Dr. Stein, indicated that his work related problems were based solely on his inability to read. When given the opportunity to comment that Littlefield had a variety of

limitations, Dr. Stein only indicated limitations with regard to Littlefield's reading ability and restriction to moderate stress. Additionally, Littlefield's own complaints repeatedly involved his inability to read, but not limitations with regard to concentration, persistence, or pace.

Littlefield argues that the ALJ failed to consider the reports regarding the testing performed by Ms. Marsh and Dr. Harris. Yet, the record indicates that the ALJ did take these tests into consideration. The ALJ believed, based upon the reports accompanying the test results, that Littlefield's variable effort resulted in test scores that underestimated his actual abilities. Since the experts themselves indicated that the reports did not necessarily accurately reflect Littlefield's actual ability, the ALJ was justified in refusing to accept them as accurate.

Ultimately, the ALJ bears the responsibility for determining a claimant's residual functional capacity. See 20 C.F.R. §§ 404.1546 and 416.946. The medical evidence in the record, when viewed as a whole, does support the ALJ's mental residual functional capacity determination. I cannot say that the ALJ did not consider the entire record in making his determination. Therefore, substantial evidence supports the ALJ's finding that Littlefield has the residual functional capacity indicated by the ALJ.

## 2. Credibility of Littlefield's Brother's Statement

Littlefield next argues that the ALJ erred in finding Littlefield's brother's statements not credible with regard to Littlefield's symptoms and limitations. The ALJ properly evaluated Littlefield's brother's statement under the standards set forth in Polaski, 739 F.2d at 1322. The ALJ discredited the statement as the brother had a financial interest in this case because he was living with and supporting Littlefield. This is an appropriate basis for the ALJ to discount his brother's credibility. See Rautio v. Bowen, 862 F.2d 176 (8th Cir. 1988) (testimony of woman who lived with claimant was discounted partially because she had a financial interest in the case). Additionally, the ALJ noted that the brother's observations were much more serious than the problems reflected in the medical records. Neither Littlefield's own testimony or the report of his treating physician indicated problems consistent with his brother's statement.

While the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence, the ALJ may disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles, 902 F.2d at 660; Outsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989). This is what the ALJ did in the present case. Credibility determinations, when adequately explained and supported, are for the ALJ to make.

Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Because the ALJ gave his reasons for discrediting Littlefield's brother's statement, which were supported by the record, I will defer to his judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).

### 3. The Vocational Expert's Testimony

Finally, Littlefield argues that the ALJ improperly accepted the vocational expert's testimony as substantial evidence, claiming that the hypothetical question posed by the ALJ was improper and that the findings of the vocational expert were inconsistent with the Dictionary of Occupational Titles (DOT). I do not find these arguments persuasive.

First, the hypothetical question posed was consistent with the ALJ's findings with regard to Littlefield's residual functional capacity. I have found that substantial evidence supports the ALJ's finding of Littlefield's residual functional capacity. As a result, I cannot find that the hypothetical was improper. Testimony from a vocational expert based on a properly-phrased hypothetical constitutes substantial evidence. Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). Therefore, the vocational expert's testimony can be regarded as substantial evidence of Littlefield's disability status.

Additionally, I do not find that the vocational expert's testimony conflicted with the DOT. Littlefield argues that the ALJ erred in relying on the vocational expert's testimony that jobs existed in the national economy which he could perform because the jobs identified by the vocational expert required a language level of 1. At Littlefield's hearing, the vocational expert responded to the ALJ's hypothetical by testifying that Littlefield would be capable of performing such jobs as off bearer, warehouse worker, agricultural sorter, and truck driver helper. The DOT indicates that Level 1 Language Development requires a reading rate of 95-120 words a minute and the ability to recognize 2,500 two or three syllable words along with the ability to print simple sentences. The ALJ, however, concluded that Littlefield could not read words longer than two or three letters. Littlefield asserts that a person who cannot read words longer than two or three letters does not have the job skills necessary to perform jobs which require a Level 1 Language Development, and that, therefore, the vocational expert's testimony conflicts with the DOT.

The Eighth Circuit has held that when a vocational expert's testimony conflicts with the DOT, the DOT controls. See Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997). The Eighth Circuit's rule is not absolute. Where the vocational expert acknowledges a claimant's limitations and testifies as to the existence of jobs which have lower requirements than those listed in the DOT, it is not error for the

ALJ to rely on such testimony. <u>Carlson v. Chater</u>, 74 F.3d 869, 871 (8th Cir. 1996); <u>see also</u> <u>Jones v. Chater</u>, 72 F.3d 81 (8th Cir. 1995).

In this case, the ALJ's hypothetical asked the vocational expert to assume that the individual was unable to read words with more than two or three letters. Therefore, I can assume that the vocational expert specifically limited his opinion to reflect appropriate jobs. <u>Whitehouse v. Sullivan</u>, 949 F.2d 1005, 1006 (8th Cir. 1991). Additionally, the vocational expert specifically stated, "These jobs would not require reading....None of these jobs require that the individual be able to read and write." (Tr. 267-268). It is clear from the record that the vocational expert considered the fact that Littlefield was unable to read and that he did not believe that the jobs referred to required literacy skills. Because the vocational expert properly limited his opinion, the ALJ did not err in relying on it.

Additionally, I do not believe that the vocational expert's testimony was contradicted by the DOT. Every job in the DOT has a Language Development level, and Level 1 is the lowest Language Development level used in the DOT. As a result, a decision holding that illiterate individuals could not perform Level 1 jobs would mean that illiteracy was a <u>per</u> <u>se</u> disability under the DOT because illiterate people would not qualify for any employment listed in the DOT. I believe that such a holding is illogical and directly contradicts the Social Security regulations. The

regulations indicate that an illiterate individual is not automatically disabled.  See 20

C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.00(h)(4)(I) and 202.00(g)(2005); see also

Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003); Derrig v. Chater, 905 F.

Supp. 584, 601 (N.D. Iowa 1995).  Courts that have confronted this issued have

concluded that it would be illogical to find that the vocational expert's testimony

was invalidated because of the DOT's literacy requirement.  See Lawson v. Apfel,

46 F. Supp. 2d 941, 947 (W.D. Mo. 1998); Warf v. Shalala, 844 F. Supp. 285, 288-

90 (W.D. Va. 1994).  Therefore, I find that the vocational expert's testimony was

not automatically in conflict with the DOT simply because Littlefield cannot read.

Littlefield also contends that the ALJ should not have relied on the vocational

expert's testimony because the exertional demand of some of the jobs listed by the

vocational expert is outside the exertional limitations outlined in the decision.  While

some of the jobs do require an exertional demand outside the limitations posed in

the hypothetical, many of the jobs do not.  Jobs that fall within Littlefield's

exertional limitations include warehouse worker, agricultural sorter, and some off

bearer positions.  Even if the positions listed as heavy[2] are eliminated, the vocational

expert would still have identified a substantial number of jobs available to a person

---

[2] Some off bearer positions and all truck driver helper positions are listed as heavy.

with Littlefield's limitations.  As a result, I hold that the ALJ did not err in relying on the vocational expert's testimony.

Considering the factors set forth in <u>Polaski</u>, 739 F.2d at 1330, <u>see supra</u>, I find that the ALJ's determination of no disability is supported by substantial evidence in the record as a whole, and should therefore be upheld.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of September, 2006.